**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HAKEEM SULTAANA, | ) | CASE NO. 1:15-cv-01963 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| BRIGHAM SLOAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Hakeem Sultanaa ("Sultanaa"), challenges the constitutionality of his conviction in the case of *State v. Sultanaa*, Cuyahoga County Court of Common Pleas Case No. CR-13-571616. Sultanaa, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on September 23, 2015. On December 16, 2015, Warden Brigham Sloan ("Respondent") filed a "Motion to Dismiss For Failure to Exhaust." (ECF No. 30.) Since the time of Respondent's motion to dismiss, Sultanaa has filed three motions to stay this matter, an alternative motion to dismiss without prejudice (which Sultanaa subsequently sought to revoke) and countless other motions.[1] (ECF Nos. 23, 28, 31, 33, 36, 39, 41, 42, 43.) Sultanaa

---

[1] Previously, the Court denied seven motions filed by Sultanaa as premature, prior to the Respondent's motion to dismiss for lack of exhaustion. (ECF No. 21.) Sultanaa was warned that, should he continue to file numerous frivolous or unnecessary motions, the Court would consider imposing the requirement that he obtain leave of Court before submitting additional filings. *Id*. In a separate order, this Court enjoined Sultanaa from filing any new motions without leave of court, while permitting him to file an objection to

also filed a brief in opposition. (ECF No. 37.) For reasons set forth in detail below, it is recommended that Respondent's motion to dismiss for failure to exhaust (ECF No. 30) be GRANTED and that the petition be DISMISSED without prejudice.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Sultaana's conviction as follows:

> [*P4] The state alleged that Sultaana was the mastermind of a theft ring, which was responsible for stealing over $47,625 from title loan companies, such as LoanMax (a.k.a Integrity Funding) and Ace Cash Express. Sultaana and the codefendants obtained title loans on vehicles using false information on loan applications and falsified certificates of auto titles. The codefendants, who testified at trial, recounted similar stories of how Sultaana, and/or his girlfriend, helped them complete loan applications secured by falsified auto titles. As soon as a loan was obtained, Sultaana directed the individuals to obtain duplicate auto titles from local title bureaus in order to procure a second loan from a different loan company. Sultaana discovered that it took seven to ten days before the liens from the loans appeared on record at the Ohio Bureau of Motor Vehicles ("BMV") and that second loans could be obtained during this time without the second lender knowing of any prior loans or liens on the title.
>
> [*P5] One of Sultaana's girlfriends, Angel Strong, testified that she assisted Sultaana and at least four individuals to obtain fraudulent loans. (Tr. 2089-2100, 2112-2138.) According to Strong, Sultaana forged whoever's name was originally on the title in order to transfer it into a codefendant's name so that the codefendant could apply for a title loan. Strong and Sultaana subsequently went with the individual to a loan company where the codefendant obtained a loan with the falsified title. Strong testified, as did numerous codefendants, that Sultaana kept most of the cash received from the loans even though the codefendants were the named borrowers, who were responsible for repayment. In each case, Sultaana

---

the instant Report and Recommendation.

promised the codefendants, who were his friends and acquaintances, that he would promptly repay the loans on their behalf.

[*P6]  According to Strong, Sultaana used a notary stamp belonging to his friend, Susan Palcisco, and forged Palcisco's name to notarize documents associated with some of the transactions.  (Tr. 2079-2080.)  Palcisco admitted at trial that she also notarized several documents for Sultaana that she knew were forged. (Tr. 2184-2186.)  An elderly friend notarized other documents for Sultaana and his codefendants.  Strong and several witnesses testified that Sultaana paid all the fees associated with the duplicate auto titles and loan applications.

[*P7]  Michael Russo ("Russo"), a detective with the Ohio BMV, investigated a report that customers of two loan companies, Ace Cash Express and LoanMax, were obtaining duplicate titles to fraudulently secure title loans.  At the time of the report, Russo was not aware of any lag time between the time a loan was extended and the time the lien appeared on the title in the BMV database.  Russo searched the BMV database and discovered a recurring pattern in which a title was used to procure a loan, a duplicate title was subsequently obtained, and a second loan was made on the duplicate title.

[*P8]  According to Russo, there were also commonalities within several of the loan documents.  For example, several applicants listed Unique Auto Sales, located at 4364 West 130th Street, as a place of employment.  Russo discovered that Sultaana previously worked at Unique Auto Sales, which was once a car dealership at that location, but the dealership had been out of business for several years.  The location where the dealership had existed was a now vacant lot with weeds poking through cracks in the cement.  (Tr. 3008.)

[*P9]  Russo also found that the license plates listed for the vehicles in the loan applications typically did not belong to the vehicle. The vehicles actually had temporary tags for which no permanent tags had been issued.  Russo further discovered that Sultaana was also known as "Kevin Hughley" and the name "Kevin Hughley" was listed on several loan documents as the applicant's employer.  Sultaana's cell phone number was frequently listed on the applications, but the last digit was changed.

[*P10]  Russo testified that he created a data sheet depicting the fraudulently secured loans in chronological order.  The data sheet listed the loans, duplicate titles, additional loans, and scrapping of some vehicles.  Russo stated: "I was able to establish a pattern within the first four transactions by the individuals."  (Tr. 3024.)

 [*P11]  At the conclusion of the trial, the jury found Sultaana guilty of 94 counts

in the indictment, including engaging in a pattern of corrupt activity and grand theft. They also found him guilty of all the attendant furthermore specifications. The court sentenced Sultaana to a ten-year prison term for engaging in a pattern of corrupt activity, four years on each of the unclassified felony title offenses, and shorter sentences on the forgery, tampering with records, theft, and securing writings by deception convictions. The court ordered the shorter sentences to run concurrently with the ten-year sentence. However, the court ordered the ten-year prison term to be served consecutive to the concurrent four-year terms on title offenses for an aggregate 14-year prison term.

[*P12]  Sultaana, through appointed counsel, filed a timely notice of appeal, and counsel filed a comprehensive merit brief.  Sultaana later requested removal of his appointed counsel, and we granted the request. Sultaana filed a motion for new counsel, and we appointed the state public defender to represent him. The state public defender subsequently moved to withdraw as counsel. We denied the motion and gave Sultaana three options (1) retain new counsel, (2) proceed pro se, or (3) work with appointed counsel. Sultaana rejected all three of these options and gave notice that he had instituted proceedings against appointed counsel in the federal district court. Thereafter, we granted counsel's second motion to withdraw as counsel.

[*P13]  Throughout several months, Sultaana filed numerous pro se motions even when he was represented by counsel.  On October 1, 2015, we declared Sultaana a vexatious litigator and ruled that "Sultaana is prohibited from instituting any appeals or original actions, continuing appeals or original actions, or filing pro se motions in any pending appeal without leave of court."  After granting appointed counsel's motion to withdraw, we granted Sultaana's request to proceed pro se provided that Sultaana refrain from filing any motions, notices or briefs without first obtaining leave of court, and that the appellate brief filed by Sultaana's first lawyer would be considered his brief on appeal.

*State v. Sultaana*, 2016 Ohio App. LEXIS 175, 2016-Ohio-199 (Ohio Ct. App., Cuyahoga County Jan. 21, 2016).

## II. Procedural History

A.  **Conviction**

On February 20, 2013, a Cuyahoga County Grand Jury charged Sultanaa with one count of engaging in a pattern of corrupt activity in violation of Ohio Revised Code ("O.R.C.") §

2923.32(A)(3), one count of grand theft in violation of O.R.C. § 2913.02(A)(3), 26 counts of securing writings by deception in violation of O.R.C. § 2913.43(A), 29 counts of tampering with records in violation of O.R.C. § 2913.42(A)(1), 27 counts of forgery in violation of O.R.C. § 2913.31(A)(3), sixteen counts of motor vehicle certificate of title offenses in violation of O.R.C. § 4505.19(A)(4), and two counts of possessing criminal tools in violation of O.R.C. § 2923.24(A). (ECF No. 30-1, Exh. 1.)

Prior to trial, the State dismissed four of the 26 counts of securing writings by deception; one of the 29 counts of tampering with records; one of the 27 counts of forgery; and, two of the 16 counts of motor vehicle certificate of tile offenses. (ECF No. 301, Exh. 5.) After a jury trial, Sultanaa was found guilty of all remaining charges. (ECF No. 30-1, Exhs. 8 & 9.)

On June 4, 2014, Sultaana was sentenced to an aggregate term of fourteen (14) years in prison.

**B.  Direct Appeal**

On June 6, 2014, Sultaana, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"). On November 4, 2014, Sultaana, through counsel, filed the following assignments of error:

   1. Hakeem Sultaana was deprived of his liberty without due process of law, where his conviction for engaging in a pattern of corrupt activity is insufficient as a matter of law.

   2. The trial court erred by refusing to grant Mr. Sultaana's Rule 29 motion for acquittal on the tampering with records charges because those counts were more specifically and properly charged under R.C. 4505.01 providing false statements on requests for duplicate titles.

   3. The trial court erred in failing to merge the securing writings by deception and theft by deception as allied offenses of similar import.

> 4. The trial court imposed a sentence contrary to law and violated Hakeem Sultaana's Fourteenth Amendment right to due process and Sixth Amendment right to trial by jury when it punished Sultaana for exercising his right to trial.

(ECF No. 30-1, Exh. 12.)

On October 15, 2015, the state appellate court recounted Sultaana's troubled history with his appointed attorneys as follows:

> The assistant state public defender's motion to withdraw as appellate counsel filed Tuesday, October 6, 2015, is hereby granted. The state public defender has indicated that appellant has filed or will be filing a lawsuit against him and his office in federal district court and has instituted other court proceedings against him in which he, the public defender, may become a witness. As such, the public defender indicates there is an irreconcilable, actual conflict of interest and he cannot provide competent and diligent representation to appellant.
>
> The court notes that appellant has repeatedly rejected the attorneys assigned to represent him and has filed numerous pro se motions in this case while being represented by court appointed attorneys. Said conduct has resulted in numerous delays of this matter. Appellant was initially appointed an attorney in this appeal, who withdrew in June 2014 so appellant could proceed pro se. In July 2014, Appellant requested a public defender and two attorneys from the county public defender's office were appointed to represent him. The public defender's office filed an appellate brief on appellant's behalf, and the prosecutor's office filed an appellee's brief.
>
> In December 2014, Appellant filed a motion seeking the removal of his appointed counsel and requested to represent himself pro se. This court granted the motion in February 2015, but in April 2015, appellant again moved to have counsel appointed. This court appointed the state public defender's office. During that time, appellant continued to file numerous motions pro se. On July 23, 2015, this court denied the assistant state public defender's first motion to withdraw as appellate counsel and gave appellant three options: (1) retain new counsel, (2) proceed pro se, or (3) work with appointed counsel. *See* Motion No. 485844. Appellant refused all of these options and instead gave notice that he had instituted proceedings against all appointed counsel in federal district court.
>
> On October 1, 2015, this court declared appellant a vexatious litigator and declared that "Sultaana is prohibited from instituting any appeals or original actions, continuing any appeals or original actions, or filing any motions in any

pending appeals or original actions, pro se, in the Eighth District Court of Appeals, without first obtaining leave of this court. He is further prohibited from filing any appeal or original actions, pro se, in the Eighth District Court of Appeals without the filing fee and security for costs required by Loc.App.R. 3(A). * * * Any request to file an appeal or original action shall be submitted to the clerk of this court for the court's review." *Sultaana v. Horseshoe Casino*, 8th Dist. Cuyahoga No. 102501, 2015-Ohio-4083.

Due to the unique circumstances presented by this case, we determine that appellant's Motion No. 489664, filed pro se on October 1, 2015, is a motion to proceed pro se and grant appellant limited leave to proceed pro se in this case *only* under the following conditions: (1) the appellant brief filed November 4, 2014, and the appellee brief filed December 26, 2014, will be considered the briefs on appeal and (2) appellant is prohibited from filing any further motions, notices, and/or briefs in this case without first obtaining leave of this court except appellant may file a motion for reconsideration from the final opinion, if appellant so chooses.

(ECF No. 30-1, Exh. 32.)

On January 21, 2016, the state appellate court affirmed Sultaana's convictions and sentence.[2] *Sultaana*, 2016 Ohio App. LEXIS 175 at **29-30.

A review of the Ohio Supreme Court's online docket reveals that Sultaana has not filed an appeal.[3]

---

[2] The state appellate court's decision post-dates Respondent's December 16, 2015 motion to dismiss.

[3] Sultaana's most recent accepted "appeal" with the Supreme Court is dated August 10, 2015, which pre-dates the state appellate court's opinion. That appeal was dismissed for want of prosecution. "On August 26, 2015, [the Ohio Supreme Court] found Hakeem Sultaana to be a vexatious litigator under S.Ct.Prac.R. 4.03(B). [It] further ordered that Sultaana was prohibited from continuing or instituting legal proceedings in this court without first obtaining leave." *In re Sultaana*, 143 Ohio St. 3d 1460, 2015-Ohio-3427, 36 N.E.3d 188, 2015 Ohio LEXIS 2234 (Ohio 2015). There is no indication that Sultaana has been prohibited from appealing the state appellate court's order concerning his direct appeal. His most recent rejected filing with the Ohio Supreme Court was a January 19, 2016 "motion to stay, leave request." That rejected filing also pre-dates the state appellate court's decision. *In re Sultaana*, 2016-Ohio-280, 2016 Ohio LEXIS 224 (Ohio Jan. 27, 2016).

**C. Federal Habeas Petition**

On September 23, 2015, Sultaana filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: U.S. right to counsel is being violated via conflict of interest issues.
>
> *Supporting Facts*: U.S. Constitutional right to effective assistant [sic] of counsel violation since the Court of Appeals denied appointed counsel's request to withdraw when appointed counsel cited conflict of interest… The Court of Appeal decision is at odds *Glasser v U.S.*, 36 L.Ed 680, 315 U.S. 60.
>
> **GROUND TWO**: Due process & equal protection of law issues substantive/procedural.
>
> *Supporting Facts*: Non-original fraud upon the court purported jury verdict forms compose as part of the record, over my objection, that are improperly under seal in which the Court of Appeals refuse to even unseal the fraud upon the court jury verdict forms (purported).

(ECF No. 1.)

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court. *See State v. Jester*, 32 Ohio St.3d 147, 154, 512 N.E.2d 962, 966 (1987).

**B.  Application to Sultaana**

Here, because Sultaana has not pursued a *direct* appeal with the Supreme Court Ohio from the state appellate court's decision on the merits of his claims, Sultaana has not exhausted any of the claims raised in his petition.[4] Therefore, Ohio's highest court has not had a full and fair opportunity to rule on the merits of any of Sultaana's claims.

The Court does not find that Sultaana's vexatious attempts to file premature interlocutory appeals with the Ohio Supreme Court render his claims exhausted. *See, e..g, State ex rel. Boddie v. Franklin County 911 Adm'r*, 985 N.E.2d 1263, 135 Ohio St. 3d 248, 249, 2013-Ohio-401 (Ohio 2013) (dismissing an appeal for lack of jurisdiction where there was no final, appealable order). Even assuming *arguendo* that the Supreme Court of Ohio had jurisdiction to consider any claims raised in these interlocutory appeals or could waive any requirement that the lower court's decision first be completed, it plainly did not do so. *See, State v. Sultaana*, 37 N.E.3d

---

[4] Respondent also opposes the amending of the petition, arguing that any proposed claims would also be unexhausted. (ECF No. 32.)  This Court agrees, as no claims exist that Sultaana has pursued all the way to the Ohio Supreme Court through the state courts' ordinary review procedures.

1247, 143 Ohio St. 3d 1461, 2015 Ohio LEXIS 2382, 2015-Ohio-3728 (Ohio Sept. 15, 2015) (dismissing the appeal because "[t]he records of this court indicate that appellant has not filed a memorandum in support of jurisdiction, due September 8, 2015, in compliance with the Rules of Practice of the Supreme Court of Ohio and therefore has failed to prosecute this cause with the requisite diligence."); *State v. Sultaana*, 143 Ohio St. 3d 1450, 2015-Ohio-3468; 36 N.E.3d 195; 2015 Ohio LEXIS 2297 (Ohio Aug. 27, 2015) ("This cause is pending before the court as a jurisdictional appeal. Upon consideration of appellant's application for dismissal, it is ordered by the court that the application for dismissal is granted."); *State v. Sultaana*, 143 Ohio St. 3d 1405, 2015-Ohio-2747; 34 N.E.3d 133; 2015 Ohio LEXIS 1740 (Ohio Jul. 8, 2015) (appeal not accepted for review).

As there have been no appeals taken by Sultaana that actually post-date the state appellate court's January 21, 2016 decision, his claims simply have not been fully exhausted.

Finally, the Court agrees with the Respondent that a stay would not be appropriate.[5] If a petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application

---

[5] The Sixth Circuit, relying on the Supreme Court's decision in *Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005), has held that stay and abeyance "should only be available in instances where the petitioner can: 1) show good cause for failing to present the claims before the state court in the first instance, and 2) show that his unexhausted claims are not 'plainly meritless.'" *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009). However, even if the first two conditions are satisfied, "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Rhines*, 544 U.S. at 277-78.

for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L. Ed. 2d 119 (1987). A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claim he seeks to present for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987); *accord Lee v. Warden, Noble Corr. Inst.*, No. 2:13-CV-0761, 2013 WL 4479200 at *7 (S.D. Ohio Aug. 19, 2013).

The Sixth Circuit set forth the options a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528, 161 L.Ed.2d 440; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, id. at 275, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

*Harris v. Lafler*, 553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19, 70 S.Ct. 587, 94 L.Ed. 761 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Another decision of this district has observed that the stay and abeyance procedures set out

-11-

in *Rhines* is inapplicable to a wholly unexhausted petition:

> The State argues that, because the petition contains only a single unexhausted ground for relief, the appropriate remedy is dismissal. Petitioner contends that, rather than dismiss his petition, this Court should adopt the stay-and-abeyance procedure outlined in *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), while he exhausts his state court remedies. In *Rhines*, the Supreme Court addressed the issue in the context of a mixed habeas petition – one containing both unexhausted and exhausted claims. The State correctly notes that there is some disagreement amongst the federal courts regarding whether the stay-and-abeyance procedure is appropriately applied to petitions containing only unexhausted claims. *Compare Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("We decline to extend [the stay-and-abeyance] procedure to the situation where the original habeas petition contained only unexhausted claims, but the record shows that there were exhausted claims that could have been included."), *with Heleva v. Brooks*, 581 F.3d 187, 191 (3d Cir.2009) (concluding that the district court had erred in deciding that Rhines confined the availability of the stay-and-abeyance procedure to mixed petitions). Because *Rhines* applies only to mixed petitions, and this is not a mixed petition, the stay-and-abeyance procedure outlined in *Rhines* is not applicable to this case.
>
> *Rhines* does not require this Court to grant [petitioner] a stay-and-abeyance in this case. Accordingly, the State's motion to dismiss the petition should be granted, and the petition should be dismissed without prejudice to refiling.

*Secessions v. Warden, Lebanon Corr. Inst.*, No. 5:13 CV 195, 2014 WL 2919186, at *5 (N.D. Ohio June 27, 2014).

This Court agrees and finds the instant petition should be dismissed in its entirety – without prejudice – as unexhausted. It further bears noting that AEDPA's statute of limitations is unlikely to have a detrimental impact on Sultaana, as it does not commence until "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

## IV. Sultaana's Pending Motions

In light of the Court's recommendation that the instant petition be dismissed as

unexhausted, all of Sultaana's pending motions would be rendered moot.  As such, in the interests of judicial economy, the Court declines to consider those motions separately.  Therefore, all of Sultaana's pending motions (ECF Nos. 5, 7, 8, 16, 23, 28, 31, 33, 36, 39, 41, 42, 43) are hereby DENIED as moot.

## V.  Conclusion

For the foregoing reasons, it is recommended that Sultaana's Petition be DISMISSED without prejudice as unexhausted.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: February 17, 2016

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  ***See United States v. Walters***, 638 F.2d 947 (6th Cir. 1981).  *See also **Thomas v. Arn***, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).